**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:23-CR-00114 |
| | ) | |
| | ) | District Judge Timothy S. Black |
| v. | ) | Magistrate Judge Karen L. Litkovitz |
| | ) | |
| SAMUEL RANDAZZO | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT SAMUEL RANDAZZO'S MOTION
FOR INTRADISTRICT TRANSFER**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................1

FACTUAL BACKGROUND .......................................................................................2

ARGUMENT ...............................................................................................................6

    A.    Legal Standard .........................................................................................7

    B.    Trial in the Western Division Would Significantly Inconvenience
        Defendant. ...............................................................................................8

        1.    A trial in Cincinnati would create significant physical, financial,
                and/or logistical burdens on Mr. Randazzo. ...............................9

        2.    Trial in Cincinnati could deter Mr. Randazzo's friends, family,
                and other supporters from attending trial................................11

    C.    The Likely Witnesses in this Matter Would be Inconvenienced by a
        Trial in Cincinnati. ...............................................................................12

    D.    The Alleged Victims of the Crimes Charged to Mr. Randazzo Would
        Not be Inconvenienced by a Trial in Columbus. ..................................13

    E.    A Vast Majority of the Key Events or Acts Alleged in the Indictment
        Occurred in Columbus. .........................................................................14

    F.    Trial in the Eastern Division Would Comport with the Prompt
        Administration of Justice .....................................................................15

CONCLUSION...........................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Chesson*,
    897 F.2d 156 (5th Cir. 1990) ................................................................15

*United States. v. Householder*,
    1:20-cr-00077 (S.D. Ohio Nov. 9, 2022), ECF Nos. 142, 145, 161 .............................8, 17, 18

*United States v. Assad Nasr*,
    2019 U.S. Dist. LEXIS 215816 (E.D. Ky. Dec. 16, 2019) .....................................................9

*United States v. Barnes*,
    2021 U.S. Dist. LEXIS 62644 (D. V.I. Mar. 31, 2021)..................................................10, 12

*United States v. Burns*,
    662 F.2d 1378 (11th Cir. 1981) ............................................................... *passim*

*United States v. Fernandez*,
    480 F.2d 726 (2d Cir. 1973).................................................................................7

*United States v. FirstEnergy Corp.*,
    1:21-cr-00086 (S.D. Ohio July 22, 2021), ECF No. 3 .........................................................18

*United States v. Fontenot*,
    2016 U.S. Dist. LEXIS 81794 (D. Neb. May 24, 2016)........................................................11

*United States v. Garza*,
    593 F.3d 385 (5th Cir. 2010) .......................................................................7, 8, 11, 15

*United States v. Gilpatrick*,
    2006 U.S. Dist. LEXIS 117022 (M.D. Tenn. June 1, 2006).................................................14

*United States v. Lewis*,
    504 F.2d 92 (6th Cir. 1974) .................................................................................7

*United States v. Lipscomb*,
    299 F.3d 303 (5th Cir. 2002) ......................................................................... *passim*

*United States v. Mathis*,
    2015 WL 5012159, 2015 U.S. Dist. LEXIS 111250 (W.D. Va. Aug. 21, 2015) .....................8

*United States v. Montemayor*,
    2013 U.S. Dist. LEXIS 116499 (S.D. Tex. Aug. 16, 2013)............................................14, 16

*United States v. Mosby*,
    2023 U.S. Dist. LEXIS 161249 (D. Md. Sept. 11, 2023) ........................................................8

*United States v. Salko*,
    2008 U.S. Dist. LEXIS 46895 (M.D. Pa. June 13, 2008) ......................................................16

*United States v. Stanko*,
    528 F.3d 581 (8th Cir. 2008) .................................................................................7, 8, 11, 12

*United States v. Torres-Mendoza*,
    2009 U.S. Dist. LEXIS 16658 (E.D. Wis. Feb. 23, 2009)..................................................9, 14

*United States v. White-Kinchion*,
    2011 U.S. Dist. LEXIS 51709 (D. Kan. May 13, 2011)........................................................14

*State ex rel. Yost v. FirstEnergy Corp.*,
    20-CV-006281(Franklin County C.P.C. Sept. 20, 2020)........................................................6

*State ex rel. Yost v. FirstEnergy Corp.*,
    Slip Op., 2024-Ohio-101 (Jan. 16, 2024).................................................................................6

**Rules**

Fed. R. Crim. P. 18 .................................................................................................. *passim*

## PRELIMINARY STATEMENT

Defendant Samuel Randazzo respectfully submits this memorandum of law in support of his motion to transfer this case to the Eastern Division of the Southern District of Ohio. Transfer to the Eastern Division is necessary to give effect to Federal Rule of Criminal Procedure 18's mandate of "due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Weighing those factors, this case belongs in Columbus, not Cincinnati.

The Government elected to seek an indictment in the Southern District of Ohio's Western Division in Cincinnati, even though the indictment itself reveals no connection to Cincinnati. Instead, most of the key events in the indictment either allegedly occurred in the Eastern Division (Columbus) or outside the Southern District entirely (Akron). Similarly, the likely witnesses, including the FBI's lead case agent and the alleged victims reside or work in Columbus, and the remainder live or work in the Northern District of Ohio.

For his part, Mr. Randazzo is a longtime resident of Columbus, and he has no ties to Cincinnati. Mr. Randazzo vehemently denies the allegations in the indictment and he will mount a vigorous defense. Forcing Mr. Randazzo to proceed in Cincinnati will unfairly burden his ability to present that vigorous defense. Mr. Randazzo would face a daily commute of over 100 miles to Cincinnati for what will likely be at least four weeks of trial. This commute would inevitably prejudice Mr. Randazzo's ability to meaningfully participate in his own defense because – among other reasons – the commute would be physically taxing to Mr. Randazzo, who will be 75-years old in July 2024 and is battling a number of chronic health issues. The alternative – effectively living in Cincinnati for the duration of trial – would be financially onerous for Mr. Randazzo, whose assets are currently frozen or encumbered by affidavits of fact filed with the Franklin

County Recorder. Mr. Randazzo's inconvenience would be further compounded by the burden faced by his Columbus-based counsel, friends, and family members should they have to travel to Cincinnati for trial.

By contrast, transfer would have minimal impact on the prompt administration of justice. Trial has not yet been scheduled in this case, and Mr. Randazzo is willing to waive his Speedy Trial rights for whatever time period is necessary to facilitate transfer. And the federal courthouse in Columbus has more than adequate judicial resources to hold Mr. Randazzo's trial.

Finally, Your Honor's prior experience with the Householder-Borges trial and FirstEnergy Corporation's deferred prosecution agreement do not weigh in favor of keeping this case in Cincinnati. While there may have been some motion practice and discussion of House Bill 6 during the Householder trial that could overlap with Mr. Randazzo's trial, the charges and relevant evidence in the two cases are very different, and Your Honor's prior experience with that matter will not materially advance the "prompt administration of justice." Similarly, the fact that this Court has presided over FirstEnergy's deferred prosecution agreement supports only the idea that Your Honor should oversee a trial *in Columbus*, not that Mr. Randazzo's trial should take place in Cincinnati. However, there is no need to burden Your Honor with an unnecessary commute given the judicial resources readily available in Columbus.

Accordingly, Mr. Randazzo respectfully requests that the Court exercise its discretion under Rule 18 to transfer this matter to the Eastern Division.

## FACTUAL BACKGROUND

Samuel Randazzo lives in Columbus, Ohio with his wife of over forty years. (Declaration of Defendant Samuel Randazzo in Support of Motion for Intradistrict Transfer ("Randazzo Decl.") ¶ 4). Mr. Randazzo, who will be 75-years old in July 2024, has resided in Columbus for more than

50 years. (Randazzo Decl. ¶¶ 3, 6). Mr. Randazzo graduated from Capital University Law School in 1975 and has spent his entire professional career based in Columbus. (*Id.* ¶ 7). As such, Mr. Randazzo's family and friend support network are anchored in Columbus. (*See id.* ¶ 8).

On November 29, 2023, a federal grand jury returned an eleven-count indictment against Mr. Randazzo in the Southern District of Ohio's Western Division in Cincinnati. Mr. Randazzo has been charged with: Conspiracy to Commit Travel Act Bribery and Honest Services Wire Fraud under 18 U.S.C. § 371 (Count 1); Travel Act Bribery under 18 U.S.C. § 1952 (Counts 2 and 3); Honest Services Wire Fraud under 18 U.S.C. §§ 1343, 1346 (Counts 4 and 5); Wire Fraud (Count 6); and Illegal Monetary Transactions under 18 U.S.C. § 1957 (Counts 7 through 11).

The Government's conspiracy, honest services wire fraud, and bribery counts all focus on an alleged payment of $4,333,333 from Company A to Sustainability Funding Alliance of Ohio, Inc. ("SFA"), an Ohio limited liability company based in Columbus, of which Mr. Randazzo is the sole member. (Ind. ¶¶ 4, 18-19, 21, 24, 25). The Government maintains that this money was intended as payment in exchange for Mr. Randazzo performing official action as Chairman of the Public Utilities Commission of Ohio ("PUCO") for the benefit of Company A. *(Id.)*. Company A (FirstEnergy Corp.) is based in Akron, Ohio in the Northern District of Ohio. The PUCO is based in Columbus, Ohio.

The allegations in the indictment describing alleged (i) overt acts in furtherance of the conspiracy alleged in Count 1, and/or (ii) the manner and means for bribery and honest services wire fraud schemes center around Columbus, not Cincinnati. For example, according to the indictment:

- On or about December 18, 2018, Executive 1 and Executive 2 met with Mr. Randazzo at his condominium in Columbus. (Ind. ¶ 19(b)).

- On or about December 18, 2018 – Mr. Randazzo exchanged text messages from Columbus with Executive 1 and Executive 2 regarding "scheduled payments." (*Id.*);

- On or about January 2, 2019, Mr. Randazzo received $4,333,333 in a bank account in the name of SFA, based in Columbus. (*Id.* ¶ 19(f));

- These charges are premised in part on excerpts of various other SMS or e-mail messages sent between Mr. Randazzo and Executives 1 and 2, which Mr. Randazzo sent from and received in Columbus. (*See, e.g.*, *id.* ¶¶ 19(d), (s), (x));

- Mr. Randazzo applied to the PUCO Nominating Council to be considered for a PUCO Commissioner appointment; the Nominating Council is based in Columbus. (*Id.* ¶ 19(k));

- Mr. Randazzo met with the Governor of Ohio, the Lieutenant Governor of Ohio and members of the Governor's staff in Columbus to discuss Mr. Randazzo's qualifications for serving as a PUCO Commissioner. (*Id.* ¶ 19(l));

- Mr. Randazzo—working in Columbus as the PUCO Chairman—supposedly took official action to assist in the drafting and passage of House Bill 6 to benefit Company A. Specifically, for example:

  o meeting with "Senator 4" and Senate counsel in Columbus (*Id.* ¶ 19(q)); and,

  o helping to draft certain portions of House Bill 6 in Columbus. (*Id.* ¶¶ 19(r));

- Mr. Randazzo – working in Columbus as the PUCO Chairman – allegedly took further official action to benefit Company A, including:

  o bringing to fruition a unanimous decision by the PUCO Commissioners in 2019 to lift the requirement that Company A file a distribution rate case in May 2024 with the PUCO. (*Id.* ¶ 19(t) to (w));

     o   overruling "PUCO Staff and other [PUCO] Commissioners" regarding issues like "decoupling," "getting rid of SEET," and "burning the DMR final report." (Ind. ¶ 19(z)).

The Government also accuses Mr. Randazzo of wire fraud.  (*Id*. ¶¶ 27-31).  Specifically, the Government alleges that Mr. Randazzo entered into agreements on behalf of Industry Group 1 that resulted in settlement payments to Industry Group 1 and its members.  (*Id*. ¶ 30(b)).  The Government claims Mr. Randazzo embezzled portions of these payments intended for Industry Group 1.  (*Id.* ¶ 30 (c)-(e)).  Although Industry Group 1's members are located throughout Ohio, at all times relevant to the Government's claims against Mr. Randazzo, the organization itself was based in Columbus.[1]  (*Id.* ¶ 6).

The Government accuses Mr. Randazzo of funneling money through various entities and bank accounts that he controlled to take portions of settlement payments.  (*Id.*).  Any such alleged conduct by Mr. Randazzo would necessarily have taken place in Columbus, where he lived and worked.  Similarly, the remaining counts of the indictment charge Mr. Randazzo with moving money derived from illegal activity through financial institutions engaged in interstate commerce.  (*Id*. ¶¶ 32-33).  Here again, any such alleged conduct would have taken place in Columbus.

Finally, certain alleged conduct relating to Company A allegedly occurred in the Northern District of Ohio, in Akron. (*See e.g., id*. ¶19(g)).

In short, not one of the facts or claims alleged by the Government occurred either in Cincinnati or within the Western Division of the Southern District of Ohio.

---

[1] Few, if any, of Industry Group 1's members were based in Cincinnati during the relevant time period.

Mr. Randazzo and SFA (and numerous other defendants) are the subject of a civil enforcement action brought by the Ohio Attorney General in the Franklin County Court of Common Pleas, sitting in Columbus. *See State ex rel. Yost v. FirstEnergy Corp.*, C.P.C. No. 20-CV-006281 (Sept. 23, 2020). In August 2021, Attorney General Yost sought and obtained an *ex parte* pre-judgment attachment order against Mr. Randazzo's and SFA's property. *State v. FirstEnergy Corp.,* Slip Op., 2024-Ohio-101 at ¶¶ 7, 9 (Jan. 16, 2024)*; (see* Randazzo Decl. ¶ 11). Post-judgment garnishments orders were issued to certain of Mr. Randazzo's and SFA's banks. (*See id.*). The Ohio Court of Appeals vacated the trial court's *ex parte* orders. *See FirstEnegy Corp.,* Slip Op., 2024-Ohio-101 at ¶ 15. However, on January 16, 2024, the Ohio Supreme Court reversed that decision on procedural grounds. Accordingly, the *ex parte* pre-judgment attachment orders remain in place. *See id.*

In the present case, Mr. Randazzo was arraigned on December 4, 2023. Alongside Andrew DeVooght, who is appearing *pro hac vice* in this matter, Mr. Randazzo is represented by Roger Sugarman. (Randazzo Decl. ¶ 12). Mr. Sugarman is based in Columbus and has been Mr. Randazzo's personal attorney since shortly before the Government executed a search warrant on Mr. Randazzo's residence on November 16, 2020. (*Id.)*.

## ARGUMENT

Pursuant to Rule 18 of the Federal Rules of Criminal Procedure, this Court has the discretion to transfer this case to the Eastern Division of the Southern District of Ohio. Mr. Randazzo respectfully requests that this Court do so, giving "due regard" to the convenience of the defendant, alleged victims, and the witnesses, and the prompt administration of justice. Fed. R. Crim. P. 18.

A.    **Legal Standard**

Rule 18 of the Federal Rules of Criminal Procedure provides that "the government must prosecute an offense in a district where the offense was committed.  The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."  *Id.*  In addition to implementing the constitutional requirement for laying venue in the district where an offense is committed, Rule 18 restates the traditional doctrine of *forum non conveniens* and thus provides a mechanism for a defendant to seek an *intra*district transfer to another division.  *See United States v. Lewis*, 504 F.2d 92, 97 (6th Cir. 1974); *United States v. Fernandez*, 480 F.2d 726, 730 (2d Cir. 1973).  At a high level, Rule 18 reflects "the public policy of this Country that one must not arbitrarily be sent, without his consent, into a strange locality to defend himself against the powerful prosecutorial resources of the Government."  *See United States v. Stanko*, 528 F.3d 581, 585 (8th Cir. 2008) (quoting *Dupont v. United States*, 388 F.2d 39, 44 (5th Cir. 1967)).

Disposition of a Rule 18 motion for transfer is vested in the sound discretion of the district court.  *See United States v. Garza*, 593 F.3d 385, 388 (5th Cir. 2010).  However, as the Sixth Circuit has explained, "that discretion cannot be used as an excuse not to give 'due regard to the convenience of the defendant and the witnesses' in fixing the place of trial."  *Lewis*, 504 F.2d at 97-98.  In addition to balancing the convenience of defendants, victims, witnesses, and the prompt administration of justice, courts may consider other factors such as the location where the alleged criminal acts occurred.  *See United States v. Lipscomb*, 299 F.3d 303, 340 (5th Cir. 2002).  Importantly, however, convenience to the Government is *not a consideration* for purposes of a

Rule 18 analysis.[2] *See Lipscomb*, 299 F.3d at 342 ("[C]onvenience of the prosecution . . . is not a factor to consider in changing venue . . . ."); *accord. United States v. Mathis*, 2015 WL 5012159, 2015 U.S. Dist. LEXIS 111250, at *9 (W.D. Va. Aug. 21, 2015) ("The convenience of the prosecution, however, is not a factor to consider in changing venue.").

In support of a motion to transfer, the defendant need only show that "all relevant things considered, the case would be better off transferred to another [division]." *See United States v. Mosby*, 2023 U.S. Dist. LEXIS 161249, at *10-11 (D. Md. Sept. 11, 2023) (internal citations omitted).

**B.    Trial in the Western Division Would Significantly Inconvenience Defendant.**

Inconvenience to the defendant is the first mandatory factor for the Court's consideration under Rule 18.  Aside from a defendant's physical location from the initial division of the district court, courts consider multiple other components when assessing inconvenience to the defendant, including (but not limited to):  the burden of travel from defendant's location to the initial division; the burden on the defendant's chosen counsel; and, the inconvenience to defendant's friends and family members.  *See, e.g.*, *United States v. Burns*, 662 F.2d 1378, 1382 (11th Cir. 1981);  *United States v. Garza*, 593 F.3d 385, 390 (5th Cir. 2010); *United States v. Stanko*, 528 F.3d 581 (8th Cir. 2008).  Trial in Cincinnati would pose an immense inconvenience (physically and financially) to Mr. Randazzo and this factor strongly favors transfer to Columbus.

---

[2] Even so, it is worth noting that the United States Attorney's Office for the Southern District of Ohio has an office in Columbus that, according to Google Maps, is an eight-minute walk to the United States Courthouse in Columbus.  The Government also has the same "office arrangement" within the Courthouse in Columbus that is available to it in Cincinnati.  And, as noted previously, the lead case agent for the Federal Bureau of Investigation testified during the Householder trial that he lives in Columbus.  *See* Direct Examination of Special Agent Blane Wetzel, *United States v. Householder*, Tr. Day 2 (page 270).

> 1. *A trial in Cincinnati would create significant physical, financial, and/or logistical burdens on Mr. Randazzo.*

Mr. Randazzo lives in Columbus, approximately 110 miles away from the Western Division's courthouse in Cincinnati.[3] (*See* Randazzo Decl. ¶ 4). The Eastern Division, by contrast, is located approximately two miles away from Mr. Randazzo's home. (*Id*. ¶ 5); *see e.g.*, *Burns*, 662 F.2d at 1382-83 (finding obvious inconvenience to defendant where trial court sat 100 miles from sought transferee division); *United States v. Assad Nasr*, 2019 U.S. Dist. LEXIS 215816, at *1 (E.D. Ky. Dec. 16, 2019) (granting motion to transfer intradistrict where defendant's home was "significantly closer" – by some 140 miles – to transferee court); *United States v. Torres-Mendoza*, 2009 U.S. Dist. LEXIS 16658, at *5-6 (E.D. Wis. Feb. 23, 2009) (transfer appropriate, in part, because trial court was 118 miles from defendant's home division).

It would be extremely burdensome for Mr. Randazzo to commute from Columbus to Cincinnati during trial. Cincinnati is an approximately two-hour drive from Columbus. A four-hour daily commute would substantially interfere with Mr. Randazzo's ability to obtain a fair trial. While spending this amount of time in the car during a lengthy trial would be physically taxing for *any* defendant, it would be uniquely unfair in Mr. Randazzo's case given that he will be 75 in July and suffers from several chronic health issues. (*See* Randazzo Decl. ¶¶ 3, 10). Additionally, as is clear from the nature of the charges and alleged conduct, Mr. Randazzo will be heavily involved in all aspects of his defense both leading up to and during trial. A daily four-hour commute for a man of Mr. Randazzo's age and health would severely undercut his ability to effectively participate in his defense at trial.

---

[3] This distance is measured (using Google Maps) from Mr. Randazzo's home address to the Potter Stewart Courthouse in Cincinnati.

The alternative to commuting – having Mr. Randazzo reside in Cincinnati for the duration of the trial – is likewise unduly burdensome. Paying for hotel accommodations, parking and meals for himself, Mr. Sugarman (Mr. Randazzo's Columbus-based lawyer), and Columbus-based defense witnesses over the course of four or more weeks would—at a minimum—be an unreasonable expense given that trial could easily (and more appropriately) be held in Columbus.[4] *See United States v. Barnes*, 2021 U.S. Dist. LEXIS 62644, at *5 (D. V.I. Mar. 31, 2021) (significant financial burden on defendant weighed in favor of transfer where defendant would "have to bear the cost of travel and hotel accommodations for herself, her attorney, and any witnesses she intends to present in her defense if the trial were to be held [in initial forum]."). This burden was badly exacerbated by the Ohio Supreme Court's recent decision, *supra*, that reinstated the pre-judgment attachment orders applicable to Mr. Randazzo's assets. Indeed, Mr. Randazzo's only sources of income are from Social Security and annual retirement plan distributions. (Randazzo Decl. ¶ 11). Mr. Randazzo is relying on these Social Security payments and retirement plan funds to defray basic living expenses and pay legal fees associated with pending civil actions. (*See id.*). Thus, the added unnecessary expense of living in Cincinnati for the duration of the trial would be crippling to Mr. Randazzo's finances.

Mr. Randazzo would be at a further disadvantage insofar as trial in Cincinnati would unnecessarily burden his Ohio counsel. Mr. Sugarman, who is based in Columbus, has been Mr. Randazzo's lawyer since shortly before the Government executed a search warrant at Mr.

---

[4] For reference, as of January 26, 2024, the total price (including taxes and excluding any parking fees) for a four-week stay in two standard rooms (one for Mr. Randazzo and one for Mr. Sugarman) at the Holiday Inn in downtown Cincinnati, which is approximately the same walk to the courthouse that the Government would have from its office in Columbus, would be approximately $12,590.84. A six-week stay at this hotel, would be $21,576.80. At eight weeks the price would be $29,612.60. *Holiday Inn Express*, IHG.com (accessed January 26, 2024), http://tinyurl.com/2s4zw44s.

Randazzo's home in November 2020, and he is intimately familiar with the subject matter of this case. *See* (Randazzo Decl. ¶ 12). Even if Mr. Randazzo could pay for Mr. Sugarman to live in Cincinnati for a lengthy trial, Mr. Sugarman would face the practical burden of preparing for a trial in Cincinnati, but focused on conduct that allegedly took place in Columbus, away from the resources of his office in Columbus. While this last point is one that attorneys often face, in this instance it is an unnecessary and inappropriate complication given the nature of the claims of the Government's case and the resources the Government has readily available and accessible to it in Columbus, as in Cincinnati.

> 2. *Trial in Cincinnati could deter Mr. Randazzo's friends, family, and other supporters from attending trial.*

For purposes of Rule 18, "the convenience to the defendant" is directly impacted by the ability of defendant's "family, friends, and other supporters to attend trial." *Stanko*, 528 F.3d at 586 ("Logically, holding a defendant's trial approximately 200 miles further than the nearest location permitted for such a trial would influence the ability of family and friends to attend, thus impacting the convenience to the defendant."); *accord*. *Garza*, 593 F.3d at 390; *United States v. Fontenot*, 2016 U.S. Dist. LEXIS 81794, at *2-3 (D. Neb. May 24, 2016) ("A component of the convenience of the defendant is the ability of family, friends, and other supporters to attend trial.").

Having resided in Columbus continuously for more than 50 years, many of Mr. Randazzo's closest friends and family reside in the Columbus area. (Randazzo Decl. ¶¶ 4, 6, 8). He has no family or personal ties to Cincinnati whatsoever. (*Id.* ¶ 9). Requiring Mr. Randazzo's friends and loved ones to travel over 100 miles each way to attend his trial for multiple weeks will necessarily discourage attendance by at least some of these individuals. Not only will Mr. Randazzo be deprived of valuable emotional support, his ability to make a show of support that will be useful

to a jury of his peers will also be adversely affected.  Holding trial in Columbus would ameliorate this concern almost entirely.

For the reasons set out above, it would be significantly inconvenient to subject Mr. Randazzo to trial in Cincinnati.  This Rule 18 factor weighs heavily in favor of transfer to the Eastern Division of the Southern District of Ohio.

### C.     The Likely Witnesses in this Matter Would be Inconvenienced by a Trial in Cincinnati.

Rule 18 requires the Court to consider the convenience of witnesses in attending trial at the initially selected forum.  This factor militates in favor of transfer where most or all of the witnesses in a case reside far from the original venue but close to the transferee division.  *See United States v. Burns,* 662 F.2d 1378, 1382 (11th Cir. 1981) (factor weighing in favor of transfer where 22 of the 24 in-state witnesses resided near transferee division, which was 100 miles from the original venue); *Barnes*, 2021 U.S. Dist. LEXIS 62644, at *7-8 (witness convenience factor weighed in favor of transfer where "the largest single bloc of potential witnesses" was located on the Virgin Island of St. Croix – a 25-minute plane ride from the initial venue); *Stanko,* 528 F.3d 581 (8th Cir. 2008) (trial court erred by failing to properly weigh the fact that all witnesses resided hundreds of miles away from original venue and closer to the transferee division); *Lipscomb*, 299 F.3d at 340 (intradistrict transfer was *not* appropriate where all of the witnesses resided in the *transferor* division, some 300 miles from transferee division).

Counsel for Mr. Randazzo anticipates there could be anywhere from two to three dozen witnesses called during trial.  Based on the indictment, the vast majority of these likely witnesses work and reside in the Columbus area, or, at the least, closer to Columbus than Cincinnati.  These likely potential witnesses include, for example: current and former PUCO Commissioners and members of the PUCO staff; the members of Ohio's executive branch of government; current and

former Ohio state legislators; and representatives of Industry Group 1 and Company A.[5]  These witnesses would all unnecessarily share the time and expense of making a long trip to and from Cincinnati for trial.  Other key witnesses would have to travel farther.  For example, Company A, Executive 1, and Executive 2 were or are all based in Akron, Ohio, roughly 230 miles from Cincinnati.

Conversely, the indictment does not identify any witnesses located in Cincinnati, nor does it provide any reason to believe there will be any such witnesses at trial.

Thus, given that trial in Cincinnati would pose significant inconvenience to nearly all of the likely witnesses in this case, this factor strongly favors transfer to the Eastern Division.

### D. The Alleged Victims of the Crimes Charged to Mr. Randazzo Would Not be Inconvenienced by a Trial in Columbus.

Convenience to the victims of an alleged crime is an additional mandatory factor considered by courts under Rule 18.  Here, the most readily identifiable "victim" in the indictment is Industry Group 1 and its members who the Government claims were victims of wire fraud. While its members are based throughout the state, Industry Group 1 itself was based in Columbus during the relevant time.  It is not clear from the indictment if there are certain members of Industry Group 1 the Government contends are alleged victims versus other members.  Columbus would be a convenient locale for any alleged victims from Industry Group 1 that are either from the Columbus area or will otherwise call upon representatives from the organization itself (based in Columbus) for assistance.  Accordingly, this factor favors transfer to Columbus or, without more, does not affirmatively support conducting the trial in Cincinnati.

---

[5] This list also includes Special Agent Blane Wetzel, who is, as noted above, the lead FBI case agent for this matter.

**E.**     **A Vast Majority of the Key Events or Acts Alleged in the Indictment Occurred in Columbus.**

While not an enumerated factor within Rule 18, courts commonly consider and weigh the location of the events and/or acts underlying the prosecution's case as a factor bearing on whether to transfer a matter intradistrict.  *See, e.g.*, *Lipscomb,* 299 F.3d at 340; *United States v. Gilpatrick*, 2006 U.S. Dist. LEXIS 117022, at *2 (M.D. Tenn. June 1, 2006).  The balance often weighs in favor of transfer where—in addition to the convenience factors—substantially all the events or acts alleged in the indictment occurred in or closer to the transferee division.  *See, e.g.*, *Lipscomb*, 299 F.3d at 340 (finding that Rule 18's convenience factors "militate[d] strongly against transfer in this case" because – in part – "[n]ot a single relevant event occurred outside Dallas"); *Burns*, 662 F.2d at 1382 (holding that the trial court abused its discretion in its application of Rule 18 and emphasizing that "[w]e must remember in applying Rule 18 that Huntsville is almost 100 miles from Birmingham . . . and the site of the alleged offenses[.]"); *Torres-Mendoza*, 2009 U.S. Dist. LEXIS 16658, at *8 (fact that defendant was "found" in Green Bay supported transfer of defendant's trial for illegal reentry charges from Milwaukee to Green Bay); *United States v. Montemayor*, 2013 U.S. Dist. LEXIS 116499, at *10 (S.D. Tex. Aug. 16, 2013) (convenience factors warranted granting defendant's motion to transfer where the Government failed to show that the case had "any ties to Houston" and failed to rebut defendant's argument that "all of the relevant factors weigh[ed] in favor of holding trial in Laredo," including that "all events pertinent to this case occurred in Laredo."); *United States v. White-Kinchion*, 2011 U.S. Dist. LEXIS 51709, at *7-8 (D. Kan. May 13, 2011) (granting defendant's motion to transfer where, in part, "[a]ll of the events leading up to the charge[s] in the indictment took place" in the transferee court).

Here, as discussed above, not a single event or act alleged in the indictment occurred in Cincinnati.  According to the Government, Mr. Randazzo met with Executive 1 and Executive 2

in Columbus and sent them text messages from Columbus. He also received the $4,333,333 alleged payment at issue from Company A in Columbus. Additionally, many of the events described in the indictment occurred during Mr. Randazzo's term of service at the PUCO. The PUCO is based in Columbus, conducts its meetings in Columbus and Mr. Randazzo's interactions with fellow PUCO commissioners, Ohio state legislators, and Ohio's executive branch and PUCO staff took place in Columbus. Moreover, the Government accuses Mr. Randazzo of embezzling money from Industry Group 1 and its members. Both Mr. Randazzo and Industry Group 1 are or were based in Columbus during the relevant time. Further, multiple counts contemplate alleged wire transfers or money transactions, which were initiated or completed in Columbus. Finally, those events alleged in the indictment that did not take place in Columbus appear to have taken place in Akron, not Cincinnati.

Thus, the underlying allegations cited in the indictment support transfer of this case to the Eastern Division.

### F. Trial in the Eastern Division Would Comport with the Prompt Administration of Justice

Courts must give due regard to the "prompt administration of justice" under Rule 18. Importantly, the "triggering purpose" for this factor was "to clarify that district courts are authorized to fix the place of trial so as to comply with the Speedy Trial Act. The Act concerns itself solely with the timeliness of when trial begins . . ." *Lipscomb*, 299 F.3d at 342. As a practical matter, courts use this factor to weigh "the impact the trial location will have on the timely disposition of the instant case" as well as the court's docket generally. *See Garza,* 593 F.3d at 390; *In re Chesson*, 897 F.2d 156, 158 (5th Cir. 1990) (affirming transfer for purposes of prompt administration where case was assigned to Judge on short notice and Judge had civil and criminal cases that would conflict with scheduled trial date); *Burns*, 662 F.2d at 1382-83.

Here, transfer to Columbus would have a minimal, if any, impact on the prompt administration of justice. There is no material aspect of a transfer that would delay the start of trial in Mr. Randazzo's case. The indictment was filed only recently. No trial date has been set. The Government continues to produce voluminous discovery (documents totaling 1,537,343 pages produced as of January 31, 2024), and there have been no substantive rulings in the case. And Mr. Randazzo is willing to waive time under the Speedy Trial Act to accommodate transfer. *See United States v. Montemayor*, 2013 U.S. Dist. LEXIS 116499, at *10 (S.D. Tex. Aug. 16, 2023) (finding, in part, that defendant's waiver of rights under the Speedy Trial Act helped to alleviate prompt administration concerns). Further, given that more than three years passed from when the Government first executed a search warrant at Mr. Randazzo's Columbus, Ohio home in November 2020, to when the Government obtained an indictment in this case, a matter of several months to facilitate an appropriate transfer cannot be viewed as delaying the prompt administration of justice.

Instead, transfer to Columbus would proactively serve the prompt administration of justice because it would be easier for all parties to marshal witnesses (and any attendant evidence) most if not all of whom are in the Columbus area. *See, e.g., United States v. Salko*, 2008 U.S. Dist. LEXIS 46895 (M.D. Pa. June 13, 2008) (granting intradistrict transfer from Harrisburg Division to Scranton Division, approximately 121 miles apart, where defendant and his family lived and worked in Scranton, many of the witnesses were located in Scranton, several government witnesses were located in Scranton, alleged crime occurred primarily near Scranton, and defendant's counsel was based in Scranton, and noting "*given that much of the evidence that would likely need to be introduced is in Scranton, trial there would promote the prompt administration of justice*.") (emphasis added).

16

Moreover, the Eastern Division's courthouse in Columbus has more than adequate judicial and physical resources to accommodate a speedy and efficient trial. It has roughly the same number of judges as the Cincinnati courthouse: four (4) Article III judges (including one Senior District Court Judge) and three (3) magistrate judges.[6] The courthouse also has a comparable number of courtrooms with similar space and technological capabilities.[7] Thus, there would be no need for the Court to relocate to Columbus and adjust its own docket to accommodate a transfer.

Finally, Your Honor's prior experience with the Householder-Borges trial (Case No. 1:20-cr-00077) and FirstEnergy's deferred prosecution agreement (Case No. 1:21-cr-00086) do not weigh in favor of keeping this case in Cincinnati. While there may have been some motion practice and discussion of House Bill 6 during the Householder trial that could overlap with the Government's claims against Mr. Randazzo, the charges and relevant evidence in the two cases are very different, and Your Honor's prior experience with that matter and serving as the Trial Judge in the instant matter will not materially advance the "prompt administration of justice."

As Your Honor knows, Mr. Householder specifically moved in limine to exclude evidence that Company A "may have bribed" Mr. Randazzo, noting that "[t]he indictment against Householder is based on what he (and other named defendants) allegedly did. It is not based on conduct [Company A] and Randazzo may have engaged in." Def. Householder's Mot. Lim. to Exclude Certain Evid. at 4, *United. v. Householder*, 1:20-cr-00077 (S.D. Ohio Nov. 9, 2022), ECF No. 142. In response, the Government confirmed the separate nature of the two cases, explaining

---

[6] *See Court Information – Columbus*, U.S. DIST. COURT FOR THE SOUTHERN DIST. OF OHIO, https://www.ohsd.uscourts.gov/content/columbus (accessed Feb. 6, 2024)

[7] *See Scheduled Court Proceedings,* U.S. DIST. COURT FOR THE SOUTHERN DIST. OF OHIO, https://www.ohsd.uscourts.gov/scheduled-court-proceedings (showing seven active courtrooms in Columbus and six active courtrooms in Cincinnati); *Courtroom Technology,* U.S. DIST. COURT FOR THE SOUTHERN DIST. OF OHIO, https://www.ohsd.uscourts.gov/courtroom-technology (accessed Feb. 6, 2024).

that "[t]he United States does not intend to introduce such evidence. To be clear, some evidence at trial (both records and witness testimony) may refer to Public Official B [Mr. Randazzo] by name or title, but the United States does not intend to introduce any evidence about payments made to Public Official B or a scheme to bribe Public Official B."  Gov't Resp. to Def's Mot. Lim. at 1, ECF No. 145.  The Government noted, however, that "if such evidence becomes relevant because of the defendants' cross-examination, case, or argument, the United States will seek to revisit this issue with the Court and parties."  *Id.* (emphasis added).  Based on the Government's response, Your Honor concluded that Mr. Householder's request was moot.  Order Resolving Mots. Lim. at 21, ECF No. 161.

Over the course of 26 trial days and almost 4,000 pages of transcripts, Mr. Randazzo's name only came up one time during the Government's entire case.  *See* Tr. Day 5 (page 903).  And this single reference consisted of the witness simply noting Mr. Randazzo's name, alongside the names of three other people, on an email being admitted into evidence.  *See id.*  Just as importantly given the Government's suggestion that it might change its position if evidence regarding Mr. Randazzo "bec[ame] relevant because of the defendants' cross-examination," when defendants' counsel did bring up Mr. Randazzo's name on two separate occasions during their cross examinations of Government witnesses, see Tr. Day 13 (page 2180) and Day 16 (page 2528), the Government did not mention Mr. Randazzo's name during its re-direct examinations of its two witnesses or otherwise "seek to revisit this issue."  See Tr. Day 13 (page 2182) and Day 16 (page 2541).

Similarly, the fact that this Court presided over the FirstEnergy deferred prosecution agreement, which is set to expire in July 2024, does not create efficiencies that would advance the prompt administration of justice.  The "Statement of Facts" agreed to by FirstEnergy demonstrates

the separate nature of the two cases.  *See* Deferred Prosecution Agreement at 23, *United States v. FirstEnergy Corp.*, Case No. 1:21-cr-00086 (S.D. Ohio July 22, 2021), ECF No. 3.

At most, such arguments support only the idea that Your Honor should oversee a trial *in Columbus*, not that Mr. Randazzo's trial should take place in Cincinnati.  However, there is no need to burden Your Honor with an unnecessary commute given the judicial resources readily available in Columbus.

Accordingly, the "prompt administration" factor does not weigh against transfer.

## CONCLUSION

For all the reasons stated above, we respectfully request that this Court grant Mr. Randazzo's motion to transfer this case to the Eastern Division of the Southern District of Ohio.

Dated: February 8, 2024

Respectfully submitted,

By:     s/  *Andrew R. DeVooght*
Andrew R. DeVooght
Loeb & Loeb, LLP
321 North Clark Street
Chicago, IL 60654
(312) 464-3100
adevooght@loeb.com
*Admitted Pro Hac Vice*

Roger P. Sugarman
6025 Cranberry Court
Columbus, OH 43213
(614) 578-6456
rogerpsugarman@gmail.com

*Attorneys for Defendant Samuel Randazzo*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2024, I electronically filed the foregoing

**Memorandum in Support of Defendant's Motion for Intradistrict Transfer**, with the Clerk of

Court using the CM/ECF system which will send notifications of filings to all counsel of record.

By:    <u>s/ *Andrew R. DeVooght*</u>
Andrew R. DeVooght
Loeb & Loeb, LLP
321 North Clark Street
Chicago, IL 60654
(312) 464-3100
adevooght@loeb.com
*Admitted Pro Hac Vice*

Roger P. Sugarman
6025 Cranberry Court
Columbus, OH 43213
(614) 578-6456
rogerpsugarman@gmail.com

*Attorneys for Defendant Samuel Randazzo*