# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 1:23-CR-114** |
| Plaintiff, | : | |
| | : | **JUDGE TIMOTHY S. BLACK** |
| v. | : | |
| | : | **UNITED STATES' RESPONSE TO DEFENDANT RANDAZZO'S MOTION FOR INTRADISTRICT TRANSFER** |
| **SAMUEL RANDAZZO,** | : | |
| Defendant. | : | |

The United States respectfully submits this response in opposition to Defendant Samuel Randazzo's Motion for Intradistrict Transfer. (Doc. 19.) In response, the United States asserts that the Court should deny the defendant's motion for the reasons set forth in the following memorandum.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney


s/Emily N. Glatfelter
EMILY N. GLATFELTER (0075576)
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: Emily.Glatfelter@usdoj.gov
Email:  Matthew.Singer@usdoj.gov

1

## MEMORANDUM OF LAW

Randazzo asserts that transferring this case to Columbus is more convenient for him, speculates that it is more convenient for witnesses and victims, and argues that the prompt administrations of justice would be minimally impacted – if at all – by such a transfer. Randazzo's arguments strain credulity. The prompt administration of justice weighs heavily in favor of maintaining the case in the Western Division given this Court's experience handling related cases, and none of the other factors come close to overriding this factor. The Court should deny Randazzo's motion.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 18 governs the place of prosecution and trial for federal defendants, and states:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

Fed. R. Crim. P. 18. The language of Rule 18 has been amended several times to clarify that a defendant has no constitutional right to trial within a particular division of a district and the prompt administration of justice is a factor the court must consider in setting the place of trial. *Id*, Advisory Committee Notes to 1966 and 1979 Amendments; *see also United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998) ("[T]here is no constitutional or statutory requirement that a defendant's trial take place in a specific courtroom or *division* within a federal judicial district.") (emphasis in original).

Trial judges have wide discretion in fixing the place of trial and "[t]he assignment of cases within a district is a matter within the exclusive domain of the local district judges." *United States v. Lewis*, 504 F.2d 92, 97–98 (6th Cir. 1974) (upholding the denial of defendants' motion for

1

intradistrict transfer). "The mere fact that a defendant's home is nearer one trial site than another is insufficient to merit transfer." *United States v. Ford,* 812 F. Supp. 761, 771 (W.D. Tenn. 1991) (*citing United States v. Afflerbach,* 754 F.2d 866 (l0th Cir. 1985)); *United States v. Scott-Emuakpor*, 2000 WL 288443, at *13 (W.D. Mich. Jan. 25, 2000) ("Rule 18 does not mandate absolute convenience to a defendant.").

## ARGUMENT

The Rule 18 factors support denying the defendant's motion to transfer this case to Columbus.

### A. The Prompt Administration of Justice

Trying this case in the Western Division will substantially further the prompt administration of justice given this Court's experience handling related matters. This district's local rules assign "related cases" to the same judge if the cases "appear to arise from the same or a substantially identical transactions, happenings, or events, including any alleged conspiracy." S.D. Ohio Crim. R. 12.1(e). "This Rule is intended to provide for the orderly division of the business of the Court. . . ." *Id*. "[T]he obvious purpose of [related case rules] is to conserve judicial resources by permitting a judge already familiar with the record of one case to also administer related cases, which are likely to share facts and legal issues." *United States v. Forlani*, No. 1:11CR491, 2012 WL 369537, at *1–2 (N.D. Ohio Feb. 3, 2012). "Such a rule is especially beneficial in cases, such as the present one, where the records are voluminous." *Id*.; *Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984) ("Local rules governing the assignment of cases are designed as internal housekeeping rules to promote the efficient operation of the district courts").

"[J]udicial efficiency . . . undoubtably contributes to the 'prompt administration of justice' as conceived by Rule 18." *United States v. Rothenberg*, No. 20-CR-00266-JST-1, 2021 WL

2

4704581, at *2 n.1 (N.D. Cal. Aug. 13, 2021). District courts find that keeping related cases with the same judge furthers the "prompt administration of justice" in resolving motions under Rule 18. *United States v. Calabrese*, No. 1:11CR437, 2012 WL 1466560, at *5 (N.D. Ohio Apr. 27, 2012) (denying motion under Rule 18 based on the district court's experience trying related cases "arising out of the same FBI investigation"); *Rothenberg*, No. 20-CR-00266-JST-1, 2021 WL 4704581, at *2–3 ("find[ing] that an intradistrict venue transfer could negatively impact the 'prompt administration of justice' given the time and effort the Court has already devoted to understanding the facts of this case."); *United States v. Lessard*, No. 11-40020-JAR, 2011 WL 1832618, at *2 (D. Kan. May 13, 2011) (finding "related cases should be tried in the same division" under Rule 18).

The same goes here. The district has already determined that this case is related to *United States v. FirstEnergy Corp.*, 1:21-cr-00086, and *United States v. Householder et al.*, 1:20-cr-00077. (Doc. 8.) With respect to *FirstEnergy*, facts at issue in that case mirror evidence that will be presented in this trial. (*Compare* Doc. 3, PageID 25–36 (*Randazzo* Indictment Over Acts) *with United States v. FirstEnergy Corp.*, 1:21-cr-00086, Doc. 3, PageID 92–101 (*FirstEnergy* Deferred Prosecution Agreement Statement of Facts).) Indeed, the charge in *FirstEnergy*—conspiracy to commit public official honest services fraud to further legislative and regulatory action by Randazzo (and others) for the benefit of FirstEnergy through bribery—is part of the same conspiracy charged in this case. (*Compare* Doc. 3, PageID 27 (*Randazzo* Indictment Count 1)) *with United States v. FirstEnergy Corp.*, 1:21-cr-00086, Doc. 1, PageID 6 (*FirstEnergy* Information).)

With respect to *Householder,* the Court presided over a complex matter involving efforts by FirstEnergy executives to corrupt Ohio government to further its interests—including House

3

Bill 6 legislation to bailout two nuclear plants—through bribery. In so doing, the Court managed a docket of more than 280 entries, including more than twenty pretrial motions, a supplemental jury questionnaire, the plea agreements of two cooperating defendants, and two immunized witnesses. The Court then presided over a seven-week, high-profile trial consisting of more than 1100 exhibits, twenty-eight witnesses, and post-trial motions.

This matter evolved from the *Householder* investigation and involves overlapping entities, such as FirstEnergy; overlapping subject matter, such as FirstEnergy's desire for a nuclear bailout; and overlapping co-conspirators, such as FirstEnergy's executives arranging bribe payments to an Ohio public official to further the bailout. In addition, a trial in this matter will include some of the same witnesses, bank accounts, communications, and official action—the House Bill 6 legislation. Further, both matters involved the corruption of the energy industry in Ohio; and both matters involved using corporate entities to conceal illicit funds to further official action related to that regulation for the benefit of FirstEnergy. The Court will therefore have the benefit of assessing evidence in this case in the context of both the voluminous record in *Householder* and the facts at issue in *FirstEnergy*.

In addition to understanding the facts of the case, presiding over a case of such magnitude required the Court to gain considerable expertise regarding the current state of federal corruption law to rule on pretrial motions, decide evidentiary issues at trial, and craft appropriate jury instructions in *Householder*, all of which are relevant here. For example, although the *Householder* indictment charged a racketeering conspiracy, the predicate crimes underlying the conspiracy involved the same corruption offenses charged here. (*Compare United States v. Householder*, 1:20-cr-00077, Doc. 22 (*Householder* Indictment) *with* 1:20-cr-00077, Doc. 260 (*Householder* jury instructions) *with* Doc. 3 (*Randazzo* Indictment).) Further, the Court's

experience applying the law to the motions *in limine* and evidentiary issues at trial will help this Court more efficiently resolve similar issues in this matter. In other words, this Court's handling of related cases will help the Court resolve pretrial matters and address in real time complicated issues as they are presented at trial more easily and efficiently.

Indeed, this Court's legal expertise in an evolving area of the law and factual expertise as to the complex issues and facts in this case are the reasons the district deemed this case related to *Householder* and *FirstEnergy*. S.D. Ohio Crim. R. 12.1(e); *Sinito*, 750 F.2d at 515. The judicial efficiency gained by this expertise is a determining factor in resolving Rule 18 transfers motions in complex public corruption cases. *Calabrese*, 2012 WL 1466560, at *1 n.1 (intradistrict transfer proper where the case "share[d] alleged facts with numerous other cases—stemming from the same Cuyahoga County [public corruption] investigation—that are currently pending with, or that already have been presided over by, the undersigned").

Further, trying this matter in this Court's Cincinnati courtroom, using this Court's judicial staff and resources, will further the Court's efficiency and ability to otherwise manage its docket, while not burdening the dockets (and litigants) of the other judges in the district. *United States v. Alvarez*, 561 F. App'x 375, 381 (5th Cir. 2014) (listing docket management and logistics among the factors the court may consider); *United States v. Scholl*, 166 F.3d 964, 970 (9th Cir. 1999) (affirming district court relying on "the efficiency to be gained by not transferring the matter to another judge" in evaluating intradistrict venue transfer); *United States v. Scott-Emuakpor*, No. 1:99-CR-138, 2000 WL 288443, at *13 (W.D. Mich. Jan. 25, 2000) (denying intradistrict transfer motion because it "would unnecessarily burden the Court and its staff with having to travel" and impact other matters on the court's docket).

The defendant completely discounts this Court's vast experience – and the time required for another judge to come up to speed – in claiming that moving this matter to Columbus would have "minimal, if any, impact on the prompt administration of justice." (Doc. 19 at PageID 110.) His argument is premised on his attempt to distance his case from the related cases on the Court's docket. For example, the defendant argues that his case is unrelated to the other cases because "Randazzo" was mentioned only a few times during the *Householder* trial. But the minimal number of references to the defendant's name is merely a reflection that the parties abided by their pretrial agreement and the Court's pretrial order not to mention "Randazzo." (*United States v. Householder*, 1:20-cr-00077, Doc. 161, PageID 3934.)[1] Even if there had been no pretrial agreement, whether "Randazzo" was mentioned at Householder's trial at most reflects a strategic decision by the parties.

---

[1] In his motion, the defendant asserts that the government "confirmed the separate nature of the two cases…" in responding to the defendants' motion *in limine* to exclude references to Randazzo. (Doc. 19, PageID 111–12). That statement is not accurate. Rather, the government stated in its response to the defendants' motion:

> The defendants filed the instant motion *in limine* to exclude certain evidence. First, the defendants seek to exclude evidence regarding FirstEnergy's bribery of Public Official B, as described in the Deferred Prosecution Agreement, which the defendants characterize as irrelevant and prejudicial. (Def. Motion, PageID 3801-03). The United States does not intend to introduce such evidence. To be clear, some evidence at trial (both records and witness testimony) may refer to Public Official B by name or title, but the United States does not intend to introduce any evidence about payments made to Public Official B or a scheme to bribe Public Official B. However, if such evidence becomes relevant because of the defendants' cross-examination, case, or argument, the United States will seek to revisit this issue with the Court and parties.

(1:20-cr-00077, Doc. 145 at PageID 3832.) This strategic decision is unexceptional given that the separate bribery charges against Randazzo involve the same bribe payors and some of the same official action as Householder. *See* Fed. R. Evid. 403 (allowing exclusion of evidence that substantially "confus[es] the issues").

To get around the judicial efficiencies of trying this case in Cincinnati, the defendant offers that he "is willing to waive time under the Speedy Trial Act to accommodate transfer." (Doc. 19-1, PageID 110). But this right is not his alone to waive. "[T]he [Speedy Trial] Act was designed with the public interest firmly in mind." *Zedner v. United States*, 547 U.S. 489, 501 (2006) (citing 18 U.S.C. § 3161(h)(8)(A)). "[T]he Act serves not only to protect defendants, but also to vindicate the public interest in the swift administration of justice," *Bloate v. United States*, 559 U.S. 196, 211 (2010)—the same interest set forth in Rule 18. So, like the Speedy Trial Act, the defendant cannot simply waive the public's interest in the "prompt administration of justice" under Rule 18. *In re Chesson*, 897 F.2d 156, 159 (5th Cir. 1990) ("Willingness of a defendant to waive Speedy Trial Act rights does not alter a court's duty to consider the prompt administration of justice as a [Rule 18] factor.") (internal quotation marks omitted).

Nor does any Speedy Trial waiver discount the expertise gained by this Court in resolving related matters and the judicial efficiencies inherent in that expertise. "[T]he prompt administration of justice includes more than the case at bar; the phrase includes the state of the court's docket generally," along with other factors, including "the impact the trial location will have on the timely disposition of the instant case and other cases." *In re Chesson*, 897 F.2d at 159. The administration of justice will operate more effectively and efficiently through this Court because another judge in this district would have to duplicate the time and resources this Court has already spent resolving issues relating to the same or similar facts and legal issues. The defendant cannot unilaterally contravene the purpose of Rule 18 and this district's local rule designed "to promote the efficient operation of the district courts." *Sinito*, 750 F.2d at 515; *Forlani*, 2012 WL 3524751, at *5.

For all these reasons, the prompt administration of justice strongly favors denying the defendant's transfer motion.

**B. Convenience of Witnesses, Victim Considerations, and Convenience of the Defendant**

Balancing the remaining Rule 18 factors does not support the defendant's motion.

The defendant cites the convenience of witnesses as a factor supporting his motion. But most of the witnesses anticipated by the defendant will be government witnesses, and the government does not believe that trial in Cincinnati will be a burden. *United States v. Maricle*, No. 609-16-S-DCR, 2009 WL 3211104, at *4 (E.D. Ky. Oct. 1, 2009) (the location of witnesses not a significant concern where it was "anticipated that the government will call the vast majority of witnesses. . . . [and] [t]he government has not complained that transfer to Frankfort presents any hardship"). In fact, in the *Householder* trial, many of the twenty-eight witnesses traveled into Cincinnati to testify without issue.

The defendant next cites the presence of victims and the location of certain events in the Indictment as supporting transfer. Not so. The Indictment details actions taking place throughout the State of Ohio. Similarly, as alleged in the Indictment, the charges include a conspiracy to "defraud and deprive the citizens of the State of Ohio" of the defendant's honest services through bribery, including those citizens located in the Western Division. (Doc. 3, PageID 27); *United States v. Lee*, 919 F.3d 340, 349–50 (6th Cir. 2019) (honest services fraud "require[s] that the official acted with intent to deprive the public of honest services"); *United States v. Fattah*, 813 F. App'x 808, 813–14 (3d Cir. 2020) (corrupt "conduct undermines the confidence of the citizenry in the integrity of all public institutions and public officials. This cynicism saps the strength of [ ] our democracy"). In addition, members of Industry Group 1 were located throughout the State of

8

Ohio, including in the Western Division during the relevant period. This factor does not support transfer.

The defendant also asserts that his case should be transferred to Columbus because a trial in Cincinnati would be significantly inconvenient for him on account of chronic health issues and financial considerations.[2] The defendant attests that he has nerve damage in his leg and painful sciatic nerve irritation that is exacerbated by prolonged periods of sitting.[3] Unfortunately, the defendant will endure these health issues, regardless of whether the trial is held in Cincinnati or Columbus. If past experience is any indication of what to expect in the future, this Court has accommodated both defendant and juror health issues by taking more frequent breaks during the trial day.

The defendant contends that his health conditions would be exacerbated by a daily drive from Columbus during trial days, thus, he would need to reside in Cincinnati during the trial, which he claims would be cost-prohibitive. According to the defendant's affidavit:

---

[2] Notably, many defendants that come before the Court do not have the opportunity to make these arguments.

[3] The defendant states that he has several chronic health issues but has only specified nerve damage and sciatic nerve irritation in his affidavit. Therefore, the United States's response is limited to those conditions.

> 11. My only income is from Social Security and retirement plan funds. As a result of actions taken in civil proceedings pending in the Franklin County Court of Common Pleas, *State ex rel. Yost v. FirstEnergy Corporation*, assets that were previously available to me are subject to pre-judgment attachment orders or other encumbrances. I have been relying on these Social Security payments and retirement plan funds to cover basic living expenses and to pay some of the ongoing fees, costs and expenses incurred in certain civil actions.

(Doc. 19-2, PageID 116.) However, public records indicate that the defendant transferred $3 million to his attorneys after the FBI searched his residence. (Exhibit A, ¶¶ 3–4 (affidavit filed in Franklin County Court of Common Pleas).) It is unclear the extent to which that money is unavailable to him. Regardless, however, the defendant attests that he has other sources of income separate and apart from the $3 million.

To buttress his inconvenience arguments, the defendant asserts that his counsel and support network will be unnecessarily burdened by a trial in Cincinnati. For example, the defendant claims that Mr. Sugarman is based out of Columbus and a trial in Cincinnati would be logistically and financially burdensome for him. (Doc. 19, PageID 105.) Additionally, the defendant argues that his closest family and friends live in Columbus and will be inconvenienced if they must travel to Cincinnati for a trial.

But these arguments do little to advance his cause. The defendant has two attorneys of record both of whom will have to travel regardless of whether the trial occurs in Cincinnati or Columbus. Mr. DeVooght, who filed the instant motion, is based out of Chicago. And Mr. Sugarman appears to currently reside in Florida, where he has requested the United States send correspondence and discovery after December 27, 2023. Similarly, based on the defendant's

10

recent pretrial request to travel to California to visit his children, at least some of the defendant's close family would have to travel for a trial regardless of location.

But even if the defendant's convenience arguments were well-supported, they would not outweigh the detrimental effect of a transfer on the prompt administration of justice in this case, particularly given the modest inconvenience noted by the defendant. *Alvarez*, 561 F. App'x at 381 (explaining inconvenience of intradistrict transfer 300 miles from where parties and counsel resided "is insufficient to reverse the district court's decision to transfer venue"); *In re Chesson*, 897 F.2d at 158–59 (acknowledging 150 mile intradistrict transfer "imposes a burden, an added expense, and is inconvenient to them and their witnesses" but affirmed based on district court's docket management concerns); *United States v. Joyce*, No. CR. 07-31 ERIE, 2008 WL 2367307, at *4 (W.D. Pa. June 10, 2008) (finding 128-mile travel for defendant or witnesses a "relatively minor inconvenience" when balanced against the prompt administration of justice); *United States v. Tettleton*, No. CRIM. 09-00015-01, 2009 WL 1307888, at *2 (W.D. La. May 8, 2009) (finding inconvenience to defendants and the witness of less than two hour travel for trial insufficient to warrant relief because "docket management" supported transfer); *Scott-Emuakpor*, 2000 WL 288443, at *13 ("While trial in Lansing would no doubt be more convenient for Defendant and possibly his witnesses . . . judicial efficiency is the more practical concern in the Court's decision."); *Calabrese*, 2012 WL 1466560, at *5 (denying defendant's motion based on court's experience trying a complex related case even though the defendant "believes that another forum would be more convenient").

## CONCLUSION

For these reasons, the Court should deny the defendant's motion.

11

Respectfully submitted,

KENNETH L. PARKER
United States Attorney


s/Emily N. Glatfelter
EMILY N. GLATFELTER (0075576)
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: Emily.Glatfelter@usdoj.gov
Email:  Matthew.Singer@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Response was served electronically upon all counsel of record.

                                    s/Emily N. Glatfelter
                                    EMILY N. GLATFELTER (0075576)
                                    Assistant United States Attorney