**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | Case No.  1:23-CR-00114 |
| | ) | |
| | ) | District Judge Timothy S. Black |
| v. | ) | Magistrate Judge Karen L. Litkovitz |
| | ) | |
| SAMUEL RANDAZZO | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

**DEFENDANT SAMUEL RANDAZZO'S REPLY IN SUPPORT OF HIS MOTION FOR INTRADISTRICT TRANSFER**

**TABLE OF CONTENTS**

                                                                                           **Page**

ARGUMENT ..........................................................................................................................2

    A.    The Government Offers No Facts to Rebut the Significant
        Inconvenience to Mr. Randazzo. ......................................................................2

        1.    Trial in Cincinnati Would Unfairly Burden Mr. Randazzo's
               Health. ....................................................................................................2

        2.    Trial in Cincinnati Would Unfairly Burden Mr. Randazzo's
               Finances. ................................................................................................3

        3.    Trial in Cincinnati Would Unfairly Burden Mr. Randazzo's
               Columbus-Based Support Network. ........................................................5

        4.    Trial in Cincinnati Would Unfairly Burden Mr. Randazzo's
               Columbus-Based Defense Counsel. ........................................................6

    B.    The Government's Response Demonstrates that Likely Witnesses in
        this Matter Would Unnecessarily be Inconvenienced by a Trial in
        Cincinnati. .........................................................................................................7

    C.    The Location of Alleged Victims Across the State of Ohio Does Not
        Favor Cincinnati Over Columbus. ..................................................................10

    D.    The Government's Response Confirms that the Vast Majority of the
        Key Events or Acts Alleged in the Indictment Occurred in Columbus. .............11

    E.    The Government's Attempted Reliance on the Prompt Administration
        of Justice is Meritless. ......................................................................................12

        1.    The Government's Purported Sensitivities About Timing Are
               Belied by the Government's Consistent Conduct to Date. ......................12

        2.    The Related Case Designation Does Not Rebut the Rule 18
               Factors. ..................................................................................................14

CONCLUSION ..................................................................................................................20

The Government's attempt to cast Mr. Randazzo's opening brief as "strain[ing] credulity" and trying "[t]o get around" relevant factors of the Rule 18 analysis is both ironic and meritless. The undisputed facts readily demonstrate that it is the Government's purported interest in the prompt administration of justice that "strain[s] credulity" and seeks "to get around" reality. None of the Government's actual conduct, dating back to November 2020, when the Government executed a search warrant on Mr. Randazzo's house, up through just the last several weeks, during which time the Government chose to dump an additional *943,639* pages of new discovery on Mr. Randazzo's attorneys, demonstrates *any* genuine interest in the prompt administration of justice. Instead, the Government asks this Court to sign off on the administration of justice when, where and how it best suits the Government. But that is not the law.

Cincinnati has nothing to do with the factual allegations underlying this case. And the Government does little to refute that trial in Cincinnati would unduly burden Mr. Randazzo, the vast majority of witnesses, and the ascertainable alleged victims in this matter. Instead, the Government tries to minimize and obfuscate these factors, even suggesting Mr. Randazzo sought to mislead this Court as to the actual residence of his Columbus-based counsel, Mr. Sugarman.

While the Government strains to leverage this case's "related" status to convince this Court that it should deny Mr. Randazzo's motion to further the prompt administration of justice, the Government's efforts do not withstand scrutiny. As explained below, beyond citing inapposite case law, the Government's reliance on the criminal case against FirstEnergy and the *Householder* trial ring hollow. Indeed, aside from general statements and conclusory assertions, the Government fails to articulate an actual reason why trial in Cincinnati is crucial to the prompt resolution of this case. Regardless, the prompt administration of justice is only one factor courts are required to consider under Rule 18. And, as explained below, any impact to the prompt

administration of justice is outweighed by Rule 18's convenience factors. Accordingly, Mr. Randazzo respectfully requests that this Court grant his Motion to Transfer.

**ARGUMENT**

**A. The Government Offers No Facts to Rebut the Significant Inconvenience to Mr. Randazzo.**

In his opening brief, Mr. Randazzo demonstrated with specific evidence the substantial burden he would face if he were unnecessarily forced to stand trial in the Western Division's courthouse in Cincinnati, approximately 110 miles away from his home. (Mem. in Support of Def.'s Mot. for Intradistrict Transfer 9, ECF No. 19-1 ("Def.'s Br.").) Citing Rule 18 and interpretive case law, Mr. Randazzo explained how this inconvenience strongly militates in favor of transferring this matter to the Eastern Division's courthouse in Columbus, approximately two miles from Mr. Randazzo's home. In response, the Government provides neither specific facts nor analogous cases. (*See* Gov't's Resp. to Def. Randazzo's Mot. for Intradistrict Transfer 9-11, ECF No. 21 ("Gov't's Resp.").) Instead, the Government offers unsupported attorney representations and conclusory arguments that ignore the specific analysis required by Rule 18 and interpretive case law. But even a cursory assessment of the Government's arguments demonstrates they do nothing to undermine Mr. Randazzo's demonstrated inconvenience.

**1. Trial in Cincinnati Would Unfairly Burden Mr. Randazzo's Health.**

In his opening brief, Mr. Randazzo demonstrated that he will suffer physically if he is forced to make several-hour trips to Cincinnati for court events. (Def.'s Br. 9.) The Government does not dispute his medical evidence, nor does it deny that Mr. Randazzo will unnecessarily experience physical strain if he is forced to repeatedly travel to Cincinnati for trial. Instead, the Government attacks a straw man: addressing whether Mr. Randazzo will be more uncomfortable in a courtroom in Cincinnati than he would be in a courtroom in Columbus. (Gov't's Resp. 9.)

(Mr. Randazzo "will endure these health issues, regardless of whether the trial is held in Cincinnati or Columbus," and that this burden can be mitigated by "taking more frequent breaks during the trial day.").  Of course this was never Mr. Randazzo's argument.  The point is that Mr. Randazzo will bear significant pain if he is required to commute by car between Columbus and Cincinnati. To that inescapable point, the Government is silent.  Similarly, the Government makes no effort to address the impact such a commute would have on Mr. Randazzo's ability to meaningfully participate in his own defense at trial—either in terms of the time wasted commuting or the physical impact of that travel on his ability to participate.

      **2.**      **Trial in Cincinnati Would Unfairly Burden Mr. Randazzo's Finances.**

In his opening brief, Mr. Randazzo demonstrated that if he elects to stay in Cincinnati to avoid a long and painful commute to Columbus, he will suffer financially.  (Def.'s Br. 10.)  In response, the Government does not deny that Mr. Randazzo will unnecessarily have to spend tens of thousands of dollars on hotels, meals and parking for himself, Mr. Sugarman and possibly defense witnesses if he is forced to stand trial in Cincinnati.  Those facts are uncontroverted. Instead, the Government suggests that these expenses are all affordable to Mr. Randazzo.  (Gov't's Resp. 10.)  Yet this assertion is not supported by any evidentiary statement regarding Mr. Randazzo's financial condition.  The Government simply points to funds Mr. Randazzo transferred to his attorneys in 2021.  (Gov't's Resp. 9-10) (citing documentation from the civil enforcement action brought by the Ohio Attorney General in the Franklin County Court of Common Pleas.)

To be clear, the funds referenced by the Government are not available to Mr. Randazzo to defray any of the costs that he will be forced to incur if his trial is held in Cincinnati.  First, some of these funds have already been spent on necessary legal fees.  Second, the remainder of these funds are unavailable to Mr. Randazzo pursuant to steps taken by the Ohio Attorney General.  A November 5, 2021 Order of Garnishment, obtained by the Ohio Attorney General and issued by

the Franklin County Court of Common Pleas, froze access to funds in Mr. Sugarman's IOLTA account, despite the fact these funds were deposited into this IOLTA account specifically to cover legal fees and costs. (*See* Exhibit A, Court Order and Notice of Garnishment, *State v. FirstEnergy Corp.*, No. 20 CV 006281 (Ohio C.P. Nov. 5, 2021); Exhibit B, Declaration of Roger P. Sugarman in Support of Defendant's Motion for Intradistrict Transfer ("Sugarman Decl.") ¶ 8.)

The remainder of the 2021 advance retainer payment to Loeb & Loeb represents prepayment of legal fees and costs. (Exhibit C, Declaration of Jeremy D. Margolis in Support of Defendant's Motion for Intradistrict Transfer ¶¶ 4-6.) Accordingly, this payment to Loeb & Loeb is no longer Mr. Randazzo's property. (*Id.* ¶ 5.) These funds are not being held in trust for Mr. Randazzo in the firm's IOLTA account. (*Id.* ¶ 6.) Instead, the funds were deposited into the firm's operating account and are firm property. (*Id.* ¶ 5.) Mr. Randazzo does not have access to these funds for any personal use. (*Id.* ¶ 6.) And, critically for purposes of this motion, Loeb & Loeb is not at liberty to modify the availability of these funds to allow for personal use. (*See id.*) Doing so might leave the account vulnerable to an argument that the funds should be subject to the State of Ohio asset freeze. Indeed, the Ohio Attorney General only discontinued his efforts to freeze the funds provided to Loeb & Loeb after the firm's General Counsel confirmed that these funds were in Loeb & Loeb's possession for the sole purpose of defraying *the firm's* fees and costs in representing Mr. Randazzo, (*Id.* ¶ 7), which would not include the cost of Mr. Randazzo's or Mr. Sugarman's hotels, meals, or parking.

The Government also references the fact that Mr. Randazzo "attest[ed] that he has other sources of income separate and apart" from the funds that are unavailable to him. (Gov't's Resp. 10.) However, as Mr. Randazzo explained in his opening brief, and the Government fails to acknowledge in its response, these "other sources of income," are from Social Security and annual

retirement plan distributions, on which Mr. Randazzo is already relying to defray basic living expenses and pay legal fees associated with pending civil actions.  (Def.'s Br. 10.)  And the Government makes no effort to determine the financial impact of unnecessary travel on Mr. Randazzo's overall personal budget.

Moreover, the Government fails to mention the fact that after Mr. Randazzo filed the instant motion, he was indicted in Summit County, Ohio.[1]  Mr. Randazzo now must defend himself against more than twenty different counts in this additional legal action, venued in Akron.  This development underscores the importance of not imposing an unnecessary financial burden on Mr. Randazzo by forcing him to stand trial in Cincinnati in this case.

### 3. Trial in Cincinnati Would Unfairly Burden Mr. Randazzo's Columbus-Based Support Network.

In his opening brief, Mr. Randazzo catalogued the negative impact on Mr. Randazzo's Columbus-based support system, and he confirmed that he has no personal ties to Cincinnati. (Def.'s Br. 11.)  In response, the Government does not deny that a trial in Cincinnati will deprive Mr. Randazzo of his support network in Columbus.  Instead, the Government points to the irrelevant, stating Mr. Randazzo's "recent pretrial request to travel to California to visit his children" suggests that "at least some of the defendant's close family would have to travel for a trial regardless of location."  (Gov't's Resp. 10-11.)  The Government's response is as callous as it is meritless.

There can be little doubt that forcing Mr. Randazzo to unnecessarily stand trial in Cincinnati will imperil the overall ability of a broad, Columbus-based family and friend network – built up over the course of more than forty years – to provide the daily support it otherwise could

---

[1] *State of Ohio v. Randazzo,* Case No. CR-2024-02-0473-A (Ohio C.P. Feb. 9, 2024).

during a trial in Columbus. The fact that a small component of Mr. Randazzo's family would have to travel to Ohio does nothing to undermine this obvious fact.

> ### 4. Trial in Cincinnati Would Unfairly Burden Mr. Randazzo's Columbus-Based Defense Counsel.

In his opening brief, Mr. Randazzo explained that trial in Cincinnati would unfairly burden Mr. Randazzo's Columbus-based defense counsel, Mr. Sugarman. (Def.'s Br. 10-11.) In response, the Government makes the bold—and baseless—assertion that Mr. Sugarman has intentionally deceived the Court. Specifically, the Government states (without any evidentiary support) that Mr. Sugarman "appears to currently reside in Florida." (Gov't's Resp. 10.) The Government makes this accusation because Mr. Sugarman asked the Government to send discovery materials to a Florida address. From this simple request, the Government now seemingly seeks to have this Court believe that counsel is intentionally misleading the Court in his arguments about the inconvenience of a Cincinnati trial.

The Government is fully aware that Mr. Sugarman is a longstanding and current resident of Columbus, a veteran of the Columbus legal community, and an Ohio taxpayer. (Sugarman Decl. ¶¶ 3-7.) The Government knows this from several trips made by Special Agent Wetzel to Mr. Sugarman's residence at 6025 Cranberry Court for the purpose of returning property seized by the FBI from Mr. Randazzo's home in 2020. (*Id.* ¶ 7.) Mr. Sugarman is fortunate enough to spend a handful of winter months in Florida. He will soon return to Columbus, his home since 1976, where he will continue to prepare for trial from his home and office. (*Id.* ¶ 5.)

PACER readily confirms Mr. Sugarman's status as an Ohio resident. Moreover, setting aside the many resources uniquely available to the Government to research such a question, a quick

phone call or email to Mr. Sugarman, much less a basic search of the Supreme Court of Ohio's Attorney Directory, would have helped clear up the Government's apparent confusion.[2]

## B. The Government's Response Demonstrates that Likely Witnesses in this Matter Would Unnecessarily be Inconvenienced by a Trial in Cincinnati.

In his opening brief, Mr. Randazzo demonstrated that nearly all of the witnesses in this case will be needlessly inconvenienced by trial in Cincinnati. (Def.'s Br. 12-13.) In response, the Government does not specifically deny either the inconvenience or the obvious fact that the vast majority of the anticipated trial witnesses live and work in the Columbus area. Indeed, neither the Government's response nor the Indictment identify a single witness from Cincinnati.

Instead, the Government brushes off these facts, asserting in conclusory fashion that it will call "most of the witnesses anticipated by the defendant," and "*the government* does not believe that trial in Cincinnati will be a burden." (Gov't's Resp. 8) (emphasis added.) It is apparently left to the Court's imagination to understand why hosting a trial more than 100 miles away from the witnesses' homes and jobs will not create an inconvenience. This is particularly true in this case, given that a number of these individuals who will clearly be inconvenienced are *active state employees*, *i.e.*, public servants to the people of Ohio, not the Federal Government. Unsupported attorney say-so just isn't enough, especially in the face of the inescapable laws of physics: it is less convenient to appear in a far-off location than it is to appear in a nearby location.

The Government cites a single district court decision from outside this District for its remarkable position about witness convenience. The Government's reliance on *United States v. Maricle* is misplaced. As an initial matter, the court's Rule 18 analysis in *Maricle* was primarily

---

[2] *See* Attorney Information – Roger Philip Sugarman, The Supreme Court of Ohio Attorney Directory, https://www.supremecourt.ohio.gov/attorneysearch/#/12007/attyinfo (last visited March 13, 2024).

focused on "whether transfer w[ould] avoid or mitigate the effect of prejudicial pre-trial publicity," not whether the Government's chosen forum was inherently inconvenient.  2009 WL 3211104, *1, 1-3 (E.D. Ky. Oct. 1, 2009).  Second, the court in *Maricle* specifically noted that it was "unable to consider the location of unidentified and unknown witnesses who may be called during trial," ***but concluded on its own, having already conducted a preliminary pre-trial conference***, that "it is anticipated that the government will call the vast majority of witnesses."  *Id*. at *1, 4.

The Government seizes on this language in its response, suggesting "most of the witnesses anticipated by the defendant will be government witnesses," (Gov't's Resp. 8), but it has done nothing to demonstrate as much.[3]  Mr. Randazzo, on the other hand, identified specific categories of witness he will definitely be calling to testify, the vast majority of whom live and work in the Columbus area.  (Def.'s Br. 12-13.)

Even assuming most of the witnesses will be called by the Government, that fact has no bearing on the Rule 18 analysis.  In the 15 years since *Maricle* was decided, no court has apparently ever cited it for the proposition that ***the government's failure to report inconvenience*** caused to witnesses it has compelled to testify ***by way of trial subpoenas*** dispels concerns about witness inconvenience under Rule 18.  Indeed, as far as Mr. Randazzo can discern, no court has reached the same conclusion before or since *Maricle*.

The language of Rule 18 provides no basis for the Government's apparent theory that any witness it calls is per se not inconvenienced by the obligation to appear in far-off locations.  Rule 18 speaks only of "witnesses," not "defense witnesses."  And this is so even though the overwhelming number of witnesses in federal criminal cases are called by the Government.  If the

---

[3] Indeed, the Government has not even produced a single FBI 302 interview summary among the 2.48 million pages of documents it has produced thus far.

8

Government's reading of Rule 18 were accurate, there would be an embedded unwritten exception for the vast number of witnesses to whom the Rule would otherwise apply. The Government offers no support for such a breathtaking approach to the Rules of Criminal Procedure.

Accordingly, other courts have rightly recognized that "[w]itnesses – whether called by the Government or a defendant – are typically third-parties to the case, and their convenience is not necessarily concurrent with the Government's convenience." *See United States v. Barrett*, 2021 U.S. Dist. LEXIS 83865, at \*12, 12 n.8 (S.D. Miss. May 3, 2021) (rejecting defendants' argument that "Rule 18's reference to the convenience of witnesses pertains only to [defense] witnesses."). As such, the Fifth Circuit, for example, has not "equate[d] the convenience of the government's witnesses with the convenience of the government or state[d] that the location of the government's witnesses within the division in which the offense occurred is irrelevant to [a] Rule 18 analysis." *See United State v. Smith*, 2011 U.S. Dist. LEXIS 64357, at \*2-3 (S.D. Ala. June 9, 2011) (discussing *Dupoint v. United States*, 388 F.2d 39 (5th Cir. 1967).)

"***By its terms, Rule 18 requires the Court to consider the convenience of 'the witnesses,' not merely 'the defendant's witnesses'***." *Id*. at \*3 (emphasis added); *see also United States v. Burns*, 662 F.2d 1378, 1380, 1381-82 (11th Cir. 1981) (evaluation of the convenience of the witnesses required the Court to consider that 22 of 24 witnesses lived in the Huntsville area; this counting necessarily included prosecution witnesses, since "all" of the defense witnesses lived in Huntsville); *United States v. Lipscomb*, 299 F.3d 303, 340-41 (5th Cir. 2002) (sua sponte transfer under Rule 18 was improper when it was inconvenient for the defendant, his lawyer "and all witnesses"); *United States v. Salko*, 2008 U.S. Dist. LEXIS 46895, at \*4 (M.D. Pa. June 13, 2008) ("Based on the circumstances, holding trial in the Scranton division would be substantially more

convenient to the defendant and the vast majority of witnesses, including many of the government witnesses.").

One thing Defendant knows for certain is that trial in Cincinnati will not be inconvenient for the Government's counsel. The same cannot be said for the Government's witnesses or the witnesses of Mr. Randazzo. This factor – both factually and legally – strongly favors transfer to Columbus.

## C. The Location of Alleged Victims Across the State of Ohio Does Not Favor Cincinnati Over Columbus.

The Government attempts to bolster its opposition to transfer to Columbus by referencing the nature of the charges in the Indictment to suggest Mr. Randazzo has wronged the citizens of the State of Ohio, as a general matter, "including those citizens located in the Western Division." (Gov't's Resp. 8-9.) The Government also again notes, as a general matter, that "members of Industry Group 1 were located throughout the State of Ohio, including in the Western Division during the relevant period." (*Id.*) Neither argument helps the Government.

First, courts around the country recognize that only tangible, identifiable alleged victims are given the brunt of consideration during a Rule 18 analysis. *See, e.g., United States v. Kahn*, 2019 U.S. Dist. LEXIS 150608, at *7 (D. Wyo. Feb. 19, 2019) ("To a lesser extent, the communities where the alleged criminal conduct occurred . . . are considered alleged victims as well, but that matters little when considering the convenience of trial location."); *United States v. Jahani*, 2012 U.S. Dist. LEXIS 174519, at *7 (C.D. Colo. Dec. 10, 2010) ("The Court declines to consider the potential interests of untold scores of people who 'may consider themselves victims.'").[4]

---

[4]The Government's response cites cases merely for the description of the charges in the Indictment. (*See* Gov't's Resp. 8.) These citations do not support the notion that the people of the State of Ohio are, generally speaking, victims for purposes of a Rule 18 analysis.

Second, as it did in the Indictment, the Government fails to identify whether there are certain members of Industry Group 1 the Government contends are alleged victims versus other members—despite Mr. Randazzo specifically raising this point in his opening brief.  (*See* Def.'s Br. 13.)  Moreover, while its members were based throughout the state, Industry Group 1 itself was based in Columbus during the relevant time.  Without any more information from the Government, Columbus would be a convenient locale for any alleged victims from Industry Group 1 who are either from the Columbus area or will otherwise call upon representatives from the organization itself (based in Columbus) for assistance.

**D.     The Government's Response Confirms that the Vast Majority of the Key Events or Acts Alleged in the Indictment Occurred in Columbus.**

In his opening brief, Mr. Randazzo highlighted eight different categories of alleged conduct or individual examples of alleged conduct described in the Indictment ***the Government drafted*** that would have taken place in Columbus.  (Def.'s Br. 14-15.)  Mr. Randazzo also noted examples of alleged conduct that would have taken place outside of the Southern District altogether (Akron), and, critically, highlighted the fact that the Indictment does not contain a ***single example of alleged conduct that supposedly took place in Cincinnati***.  (*Id.* at 15.)

Given Mr. Randazzo's specific observations, one would expect the Government either to challenge the accuracy of Mr. Randazzo's characterization as to where alleged conduct would have taken place, or to present the Court with examples of alleged conduct that took place in Cincinnati – or both.  Tellingly, however, the Government fails to do either.  Indeed, the Government does not challenge any of Mr. Randazzo's specific observations.  Similarly, the Government fails to provide the Court with a ***single example of supposed conduct that took place in Cincinnati***. Instead, the Government baldly asserts in the most general terms possible that "[t]he Indictment details actions taking place throughout the State of Ohio," and then quickly pivots to general

11

assertions regarding the citizenry of the Western Division being victims of Mr. Randazzo's alleged conduct. (Gov't's Resp. 8.)

Mr. Randazzo's thorough discussion is thus uncontested and unrebutted. This case presents no meaningful connection to Cincinnati, let alone a connection that is stronger than the manifest connections to Columbus.

**E.    The Government's Attempted Reliance on the Prompt Administration of Justice is Meritless.**

Perhaps because it cannot provide meaningful responses to Mr. Randazzo's arguments as to most of the Rule 18 factors, the Government literally turns the Rule upside down, leading with and focusing disproportionately on the Rule's final factor—the prompt administration of justice. However, here again, the Government's arguments lack merit.

**1.    The Government's Purported Sensitivities About Timing Are Belied by the Government's Consistent Conduct to Date.**

As an initial matter, the Government's purported interest in the prompt administration of justice is belied by its actions and should not be afforded any weight. First, as noted before, (Def.'s Br. 16), and ignored by the Government in its response, the Government waited three years after executing a search warrant on Mr. Randazzo's house to obtain an Indictment. During the course of these three years, the Government *repeatedly* chose to investigate, charge and/or try a number of other cases, including, ***but not limited to*** the case against Mr. Householder.

The Government is, of course, free to make such discretionary decisions. However, given its repeated decisions to prioritize other matters over this case, the Government cannot now credibly complain about the handful of months that might be required to effectuate an intradistrict transfer that will alleviate substantial burden to the defendant and place the trial where the charged conduct allegedly occurred and the potential witnesses are located. The Government should not be able to invoke timeliness only when such an argument suits its needs.

Second, despite having obtained an Indictment in November 2023 (after more than three years of investigation), the Government waited three months to produce nearly a million pages of discovery materials to the defense.  It cannot go without remarking that this three-month delay is almost certainly longer than any delay that might be caused by transferring this matter to Columbus.  Again, the Government appears to be sensitive to calendar issues only when they suit its position.

Specifically, the Government served more than ***736,000*** pages of documents on defense counsel at the end of February 2024.  And the "index" accompanying this voluminous production included useless descriptions such as "Energy Harbor," "Business Records," for more than ***473,000*** pages of that production.  Moreover, the Government told this Court at the most recent status on February 28 that it expected to produce another "***small batch***" of discovery within the week.  That "small batch," produced on Friday, March 8, contains another ***207,275*** pages of new documents.  It is completely unreasonable to suggest such a vast quantity of documents is a "small batch."  In total, the Government chose to produce more than ***943,000*** pages of documents three months after obtaining an Indictment.

Indeed, the Government's ***chosen course of action*** has created circumstances requiring defense counsel to contemplate trial, at the earliest, in the spring of 2025, simply so as to be able to adequately prepare.  Thus, literally ***none*** of the government's actual conduct from November 2020 through the present has been consistent with any interest in the prompt administration of justice in this case.[5]  This backdrop is critical context for this Court in evaluating arguments the Government has now crafted to try to defeat Mr. Randazzo's transfer motion.

---

[5]Additionally, the Government's position, albeit meritless, should be taken as confirmation that it will not seek to supersede the Indictment to add any alleged co-conspirators or new claims, and a bar against any such attempts in the future.  Indeed, it "strain[s] credulity" to assert an interest in

## 2. The Related Case Designation Does Not Rebut the Rule 18 Factors.

The Government begins its response, not by meaningfully engaging with Rule 18, but instead by citing to a Southern District Local Rule regarding the Related Case designation. (Gov't's Resp. 2.) Specifically, the Government quotes S.D. Ohio Crim. R. 12.1(e): "This district's local rules assign 'related cases' to the same judge if the cases 'appear to arise from the same or a substantially identical transactions, happenings, or events, including any alleged conspiracy.'" (*Id.*) Yet tellingly, this quote is (misleadingly) incomplete. The Government omits the final sentence of the local rule: "This Rule is intended to provide for the orderly division of the business of the Court *and does not grant any right to any litigant.*" S.D. Ohio Crim. R. 12.1(e) (emphasis added).

Consistent with this phrase the Government chose to leave out, courts in this District and elsewhere have readily rejected any suggestion that keeping related cases together furthers the prompt administration of justice in every instance. *See, e.g.*, *United States v. Miller*, 314 F.R.D. 574, 579 (S.D. Ohio 2016) ("[C]ontrary to the Government's assertion, the existence of related cases pending against co-conspirators in this Court does not preclude [a Rule 21] transfer. None of the Government's Ohio co-conspirators are co-defendants, and all six co-conspirators have pleaded guilty in Cincinnati"); *United States v. Lessard*, 2011 WL 1832618, 2011 U.S. Dist. LEXIS 51815, at *7-8 (D. Kan. May 13, 2011) (finding "the court agrees with the government that *these* related cases should be tried in the same division" and *transferring case to district based on convenience to co-defendant*) (emphasis added); *United States v. Rothenberg*, 2021 WL 4704581,

---

the prompt administration of justice while intending to supersede. Any such effort would delay the administration of justice *far longer* than the minimal amount of time it would take to effectuate an intradistrict transfer in this case.

2021 U.S. Dist. LEXIS 195654, at *2, 4-6 (N.D. Cal. Aug. 13, 2021) (denying transfer where court had just entered a consent judgment in an *ongoing* SEC enforcement action asserting *substantially similar* fraud claims against defendant and where the defendant moved to transfer the case from Oakland to San Francisco).

That the Government harps on this case's related case designation reflects its own myopic view of the prompt administration of justice factor. In its response, the Government cites the Sixth Circuit's decision in *United States v. Lewis,* emphasizing that "[t]rial judges have wide discretion in fixing the place of trial and '[t]he assignment of cases within a district is a matter within the exclusive domain of the local district court judges.'" (Gov't Resp. 1.) The Government frames *Lewis* in such a way so as to essentially ask this Court to give dispositive weight to case administration considerations in deciding Mr. Randazzo's Motion to Transfer. But the Sixth Circuit forbade such an analysis in *Lewis,* holding "that discretion cannot be used as an excuse not to give 'due regard to the convenience of the defendant and the witnesses' in fixing the place of trial." 504 F.2d 92, 97-98 (6th Cir. 1974).

Indeed, every Rule 18 analysis, whether or not it involves a case deemed related to other cases, must be decided on the ***specific facts and circumstances of that particular case***. This straightforward point is critical here, given the Government's repeated reliance on cases that contain glaring factual differences from the undisputed facts presented by the Motion to Transfer. *See, e.g.*, *United States v. Alvarez*, 561 Fed. App'x. 375, 381-82 (5th Cir. 2014) (per curiam) (defendants' ***sole convenience argument*** was that transferee court was too far away from their homes); *In re Chesson*, 897 F.2d 156, 158-59 (5th Cir. 1990) (per curiam) (denying writ of mandamus for district court's transfer order where court inherited the case suddenly from a judge placed on disability retirement and District Court was short two of its four authorized Article III

judges); *United States v. Forlani*, 2012 WL 3524751, 2012 U.S. Dist. LEXIS 114219, at *7 (N.D. Ohio Aug. 14, 2012) (defendant's residence **only 15 miles closer to transferee court**); *Rothenberg*, 2021 U.S. Dist. LEXIS 195654, at *3-6 (defendant only sought transfer **from Oakland courthouse to San Francisco courthouse, which are 12 miles apart**); *United States v. Calabrese*, 2012 WL 1466560, 2012 U.S. Dist. LEXIS 59362, at *14, 17 (N.D. Ohio Apr. 27, 2012) (denying transfer where trial court had **five related cases and defendant only sought transfer between Akron and Cleveland**); *United States v. Joyce*, 2008 U.S. Dist. LEXIS 45362, at *13 (W.D. Pa. June 10, 2008) ("The *relatively* minor inconvenience to witnesses is outweighed **by the overwhelming adverse publicity in the Erie Division that will no doubt continue**") (emphasis added).[6]

The Government's attempt to rely on this Court having presided over *United States v. FirstEnergy Corp.*, 1:21-cr-00086, is also misplaced. First, the Government's request that this Court compare the Deferred Prosecution Agreement ("DPA") in *FirstEnergy* to the Indictment in this case actually undercuts the Government's later attempt to rely on this Court having presided over the *Householder* trial. (*See* Gov't's Resp. 3.) Indeed, the DPA makes very clear that the facts

---

[6]*United States v. Tettleton* is closer to the parties' arguments here, but still inapposite. 2009 U.S. Dist. LEXIS 39399, at *1. (W.D. La. May 8, 2009). There, defendants objected to transfer of their case from the Monroe Division to the Shreveport Division. *Id.* at *1-2. Prompt administration concerns caused the court to proceed with transfer. *Id.* at *5-6. Specifically, travelling to Monroe to hold trial (which the court was inclined to do) **meant depriving one of the Shreveport judges access to his courtroom**. *Id.* at *6. More importantly, **unlike here, the trial date in Tettleton had already been set, so the Court prioritized managing its own docket during a set period of time, during which other civil and criminal cases required the court's attention**. *Id.* Likewise, the court in *United States v. Scott-Emuakpor* emphasized that there was limited courtroom availability in the transferee venue and that he and his staff would be required to travel, which would affect his ability to manage his docket. 2000 WL 288443, 2000 U.S. Dist. LEXIS 3118, at *35-36 (W.D. Mich. Jan. 25, 2000). Notably, the transferor venue in *Scott-Emuakpor* was **the site of the alleged offense, and the distance between venues was under 100 miles** (Lansing to Grand Rapids, 68 miles to be exact). *See id.*

underlying the *Householder* case are ***separate and distinct*** from the allegations against Mr. Randazzo.

Second, this Court was not called upon in *FirstEnergy* to receive or analyze any briefing, witness testimony, exhibits, or lawyer argument regarding the accuracy of ***any aspect*** of the uncontested "Statement of Facts" in the DPA. Instead, FirstEnergy readily agreed to these "facts," to avoid criminal prosecution. Thus, this Court having presided over FirstEnergy's DPA, which soon expires, does not meaningfully contribute to the prompt administration of justice in this case.

The Government's reliance on this Court having presided over the trial in *United States v. Householder*, 1:20-cr-00077, also falls flat. Indeed, beyond its repeated, general statements, the Government does not provide this Court with ***any*** specifics demonstrating the meaningful promotion of the prompt administration of justice. For example, the Government highlights the many motions, witnesses, and exhibits at issue in the *Householder* trial. But other than Householder's motion *in limine*, pursuant to which the Government ***readily agreed that it would not introduce evidence relating to claims that FirstEnergy bribed Mr. Randazzo or that it engaged in a scheme to do so***, Order Resolving Mots. Lim. at 21, *United States v. Householder*, ECF No. 161, the Government fails to describe which, if any, of these different items actually overlaps with the specific facts of Mr. Randazzo's case.

As noted above, Mr. Randazzo's counsel has identified only two of the twenty-eight witnesses from the *Householder* trial that are likely to testify during Mr. Randazzo's trial. Moreover, the Government's invocation of general and generic topics such as background on FirstEnergy's "desire for a nuclear bailout," "corruption of the energy industry in Ohio," and the use of ***completely different corporate entities*** to allegedly engage in separate illegal activity does nothing to demonstrate how this Court's having presided over the *Householder* trial would

meaningfully promote the prompt administration of justice, much less counterbalance the other Rule 18 factors that readily demonstrate this case should be transferred to Columbus.[7]

The Government also suggests that this Court acquired "considerable expertise regarding the state of federal corruption law" that would promote the prompt administration of justice in this case.  (Gov't Resp. 4-5.)[8]  While there is no question this Court has considerable experience with the law in many different substantive areas, including "federal corruption law," the Government provides no explanation why it believes one of this Court's capable colleagues in Columbus would have any trouble whatsoever getting up to speed on the most recent aspects of "federal corruption law," if that colleague is not already so familiar.  Courts are called to perform such tasks on a daily basis.  And this Court's colleague would have plenty of time to perform any such review as defense counsel wades through the Government's 2.48 million pages of discovery.  Indeed, as discussed at the last status, trial – *which is not yet even scheduled* – is not likely to proceed until the spring of 2025 at the earliest.

---

[7] The Government makes the straw man argument that Mr. Randazzo's offer to waive time under the Speedy Trial Act to accommodate a transfer should be interpreted as a ploy by Mr. Randazzo to "unilaterally contravene the purpose of Rule 18 and [S.D. Ohio Crim. R. 12.1]."  (Gov't Resp. 7.)  The solid legal and factual basis for this Motion says otherwise.  Mr. Randazzo's comment about the Speedy Trial Act simply confirms that he will not ask for transfer while simultaneously challenging delays that might be caused by such a transfer.

[8] Citing *Calabrese*, the Government suggests that "[t]he judicial efficiency gained by [a judge's factual and legal expertise from presiding over related cases] is a determining factor in resolving Rule 18 transfers [sic] motions in complex public corruption cases."  (Gov't Resp. 5.)  No case, including the court's opinion in *Calabrese*, creates any kind of bright-line rule to this effect.  Indeed, like every other case involving a Rule 18 analysis, *Calabrese's* outcome is based on the circumstances of that specific case.  *See* 2012 U.S. Dist. LEXIS 59362, at *16 ("[I]n accepting the transfer, the undersigned took into consideration the convenience of the defendants and witnesses, and the prompt administration of justice as required by Rule 18.").

Finally, the Government argues that "trying this matter in this Court's Cincinnati courtroom, using this Court's judicial staff and resources, will further the Court's efficiency and ability to otherwise manage its docket, while not burdening the dockets (and litigants) of the other judges in the district." (Gov't Resp. 5.)  However, transfer here would not require your Honor or your Honor's staff to travel to Columbus. (Def.'s Br. 17-19.)  Unlike in the cases cited by the Government, there is no indication that there is a courtroom shortage in Columbus or that a transfer would require a judge in Columbus to change their trial schedules—particularly given that trial has not been scheduled in this case.  *See Scott-Emuakpor*, 2000 U.S. Dist. LEXIS 3118, at *35-36; *United States v. Scholl*, 166 F.3d 964, 970 (9th Cir. 1999) (citing lack of courtroom space in Tucson as impacting prompt administration in addition to the efficiency of keeping the case with the same judge; in affirming, the court noted that "we might have decided the matter differently").

Indeed, the Government fails to even respond to Mr. Randazzo's observations that (a) the Eastern Division's courthouse in Columbus has more than adequate judicial and physical resources to accommodate a speedy and efficient trial; (b) it has five district court judges and three magistrate judges; and (c) the courthouse also has a comparable number of courtrooms with similar space and technological capabilities.  In fact, as the Court highlights on its website, the Southern District was recently recognized by the Administrative Office of the U.S. Courts "as one of the most efficient courts in America," ranking "in the top 15 for being most productive among the 94 federal district courts," based on "hours on the bench, trial hours, and the number of civil and criminal before each district."  Ohio Southern District ranked among most productive in country, U.S.D.C. S.D. Ohio (Feb. 26, 2024), https://www.ohsd.uscourts.gov/news/ohio-southern-district-ranked-among-most-productive-country.  Columbus-based Chief Judge Marbley explained, "Trying cases and providing justice efficiently are among our core judicial competencies." *Id*.

As the above discussion demonstrates, the Government fails to articulate an actual reason why trial in Cincinnati is crucial to protect judicial efficiency and the prompt resolution of this case. Regardless, the prompt administration of justice is only one factor courts (and the one mentioned last among those enumerated in Rule 18) are required to consider. Nothing in this case relates to Cincinnati, and the Government does little to refute that trial in Cincinnati would unduly burden Mr. Randazzo, the vast majority of witnesses, and the ascertainable alleged victims in this matter. Thus, any speculative impact upon the prompt administration of justice is outweighed by Rule 18's convenience factors.

## CONCLUSION

For all the reasons stated above and for the reasons stated in Mr. Randazzo's Memorandum in Support of his Motion to Transfer filed on February 8, 2024 (ECF No. 19-1), Mr. Randazzo respectfully requests that this Court grant his motion to transfer this case to the Eastern Division of the United States District Court for the Southern District of Ohio.

Dated: March 14, 2024

Respectfully submitted,

By:    s/ *Andrew R. DeVooght*
Andrew R. DeVooght
Loeb & Loeb, LLP
321 North Clark Street
Chicago, IL 60654
(312) 464-3100
adevooght@loeb.com
*Admitted Pro Hac Vice*

Roger P. Sugarman (0012007)
6025 Cranberry Court
Columbus, OH 43213
(614) 578-6456
rogerpsugarman@gmail.com

*Attorneys for Defendant Samuel Randazzo*